415 So.2d 6 (1982)
Floyd MORGAN, Appellant,
v.
STATE of Florida, Appellee.
No. 54939.
Supreme Court of Florida.
March 18, 1982.
Rehearing Denied July 9, 1982.
*7 Michael E. Allen, Public Defender and Margaret Good, Asst. Public Defender, Second Judicial Circuit, Tallahassee, for appellant.
Jim Smith, Atty. Gen., and Raymond L. Marky, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
This cause is before the Court on appeal from a judgment of conviction of first-degree murder and a sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.

FACTS
Appellant was convicted of the murder of Joe Saylor, who was stabbed to death in his cell in Union Correctional Institute at approximately 2:00 a.m. on July 16, 1977. At the time of the murder, appellant was under a sentence of thirty years imprisonment for second-degree murder.
Glynn Griffin, another inmate, testified that at appellant's request he made a knife for him in the prison shop. At the trial, *8 Griffin identified a knife as the one he made. The knife was admitted into evidence. Griffin testified further that appellant told him he wanted the knife in order to stab a man who owed him $400 and would not pay.
Dan Helton, one of appellant's cellmates, testified that he, the victim Joe Saylor, and two other prisoners were in their cell in bed and asleep by 12:00 midnight on the night of July 15. Helton testified that he was later awakened by a yell following which a cellmate told him to turn on the light. Then he saw Joe Saylor on the floor covered with blood.
Michael Daly, a prisoner whose cell was nearby, testified that he was sitting at a table in the hall writing a letter that night after most of the other prisoners had gone to sleep. He heard noises from appellant's cell. Then, appellant walked out of the cell. He walked down the hall toward a lavatory. Daly followed him to find out what had happened. In the lavatory, he saw that appellant's right hand was cut on the palm side across the base of the fingers.
William Williamson, who slept in a nearby cell, was reading at 2:00 a.m., he testified, when he heard noises. He went out of his room and saw appellant, whose hand was bleeding. Morgan said, "I killed him."
On the morning of the murder, appellant was interrogated by prison investigators. Inspector Ackett testified that appellant voluntarily made a statement admitting that he committed the murder. That same day, appellant was removed from his residence at Union Correctional Institute and taken to the Lake Butler Reception and Medical Center, where he was confined until September 9, 1977. Then he was transferred to Florida State Prison until his arraignment on January 16, 1978. Appellant was indicted on November 28, 1977, and was represented by counsel at his arraignment.
On May 19, 1978, appellant filed a pro se motion for discharge from the accusation made in the indictment, asserting that the state's failure to afford him a "prompt first appearance" under Florida Rule of Criminal Procedure 3.130(b) and its failure to afford him a probable cause determination under Florida Rule of Criminal Procedure 3.131 and the cited case of Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), had denied him due process of law. The trial judge denied the motion without a hearing and declared in his order that he would not consider any more pro se motions of the defendant.
Inmate Helton's testimony included reference to Alvin Robitaille, another of appellant's cellmates. Helton testified that Robitaille was present in the cell when the lights were turned on and Saylor's body discovered. Robitaille was listed by the state as a prospective witness, but was never called to testify. At the conclusion of the evidence, the defense had the "middle" closing argument, preceded and followed by the closing remarks of the state's counsel. After the defense made its closing remarks, the court took a ten minute recess. After court reconvened, the defense asked to briefly re-open its closing argument for the purpose of commenting on the state's failure to call Robitaille as a witness. The court denied this request.

ISSUES ON APPEAL OF THE JUDGMENT OF CONVICTION
Appellant contends that the trial court committed reversible error in failing to ensure the reporting and transcription of all of the proceedings below. He argues that the requirement in section 921.141(4), Florida Statutes (1977), of "certification by the sentencing court of the entire record," together with the constitutional requirement of uniformity in capital sentencing which appellate review is designed to ensure, mandate that all proceedings leading to a judgment of conviction of a capital felony be reported, transcribed, and made a part of the record. Appellant points out that his arraignment, a number of pre-trial hearings, and several bench conferences appear not to have been reported.
The state responds by pointing out that all of the court reporter's notes of proceedings *9 before the trial court were transcribed, made a part of the record, and forwarded to the supreme court for review. The state argues that this complied with section 921.141(4) and Florida Rule of Appellate Procedure 9.200. We sustain the state's position. By certifying the reported and transcribed materials along with all the documents of record, the court complied with the requirement of certification of the "entire record." The fact that parts of the proceedings were not reported has not prejudiced the appeal in this case.
Appellant contends that the trial court committed reversible error in denying his pro se motion to discharge without holding a hearing on the possibility of intentional and prejudicial delay of prosecution. In his testimony on behalf of the state's proffer of appellant's confession, Inspector Ackett testified that following his inculpatory statement, appellant asked to see an attorney. Appellant now argues that the state's delay of over four months in bringing the charge and six months before providing counsel and an appearance before a judicial officer denied him due process of law. He contends that his May 19, 1978 motion raised this issue and should not have been denied without inquiry into the reasons for and the prejudice caused by the delay.
Appellant correctly points out that there are cases where the Due Process Clause is implicated by prosecutorial delay even though neither the defendant's right to a speedy trial nor the applicable statute of limitations are offended. See United States v. Lovasco, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); State v. Griffin, 347 So.2d 692 (Fla. 1st DCA 1977), cert. dismissed, 358 So.2d 134 (Fla. 1978). We do not find, however, that appellant's May 19, 1978 motion was effective to raise the issue of prejudice resulting from the four-month delay between the crime and the indictment occurring the previous summer and fall. If the pre-accusation delay was intentional and prejudiced the defense, and presented an issue of denial of due process, appellant should have moved to dismiss the indictment on that ground as soon as possible after the indictment was returned. Moreover, we find that the delay in the appointment of counsel did not prejudice the appellant.
Appellant contends that the trial court failed to make a sufficiently thorough inquiry into the voluntariness of his confession. In the absence of adequate inquiry, he argues, it was error to admit testimony about the confession and therefore he is entitled to a new trial. Appellant claims that there was an inconsistency between the testimony of the state's witness and the representations of the state's counsel on the question of whether a tape recording of appellant's statement conclusively showed that appellant confessed before asking for an attorney. This argument is without merit. If the tape showed anything that would have raised a question on this issue, appellant could have presented it to the court. The trial court found that the confession was voluntary based on the evidence submitted. The court did not abuse its discretion by not making further inquiry on its own motion. By holding a hearing outside the presence of the jury on the question of the voluntariness of the confession, the court did all that was required to protect appellant's rights under the Fifth Amendment. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). We find that the court correctly determined the confession to be admissible.
Appellant contends that the trial court erred in denying his motion to exclude employees of the state prison system from service on the jury. His motion was based on the allegation that Union County, where the trial was held, has a disproportionate share of its eligible population in the employ of the state prison system due to the presence of numerous correctional facilities in that region of the state. Appellant argues that section 40.07, Florida Statutes (1977), which disqualifies sheriffs, deputies, and municipal police officers from jury service, should be construed to apply to correctional officers.
*10 We decline to hold that all correctional officers were intended to be included within the classes of persons disqualified from jury service by section 40.07(2). In their briefs, both parties agree that since appellant did not exhaust all his peremptory challenges to prospective jurors, we are not required to consider whether any juror served who should have been excused for cause. Young v. State, 85 Fla. 348, 96 So. 381 (1923). Nevertheless, we have reviewed the transcript of jury selection. We are satisfied that all persons selected were qualified; none were subject to challenge for cause.
Appellant presents three instances in which he contends the trial court improperly limited his cross-examination of state witness Glynn Griffin. The first instance had to do with Griffin's testimony about the knife. On direct examination, Griffin described the knife he said he made for appellant. The knife itself had not yet been admitted into evidence. On cross examination, appellant's counsel sought to have the witness make a drawing of the knife on a blackboard. The court refused to allow the blackboard drawing on the ground that such an illustration could not be preserved and made a part of the record. Appellant argues that this ruling prevented effective cross examination and thereby abridged his right to confront the witnesses against him.
The court's ruling on appellant's proposed use of chalk drawings on a blackboard was a limitation on the method, not the substance, of appellant's cross examination of Griffin. Appellant now argues that a blackboard drawing could have been preserved for the record by photographing it. Appellant did not propose this solution in the trial court, however. Nor did he ask that the witness be permitted to draw the knife with pencil and paper. The question of what method of cross examination to allow was a matter for the sound discretion of the trial court and appellant has not shown that the court abused its discretion.
Appellant also contends that the trial court twice more improperly limited cross examination, abridging the right to confrontation of witnesses, when it sustained the state's objections to two questions asked witness Griffin on cross examination. The questions were whether he had ever made other knives while in prison and how long he had been incarcerated at Union Correctional Institute.
With regard to the question of how long Griffin had been confined at Union Correctional Institute, we hold that the trial court was correct in sustaining the state's objection on the ground of relevance. Appellant argues that information on the seriousness of the crime for which Griffin had been imprisoned, and inferences about how much of his sentence remained to be served, would have been relevant to show his interest in cooperating with the state. We do not see the relevance. The defense was allowed to impeach Griffin's credibility in the standard fashion. Thereby it was brought out that he had been convicted of crimes three times. The length of his past incarceration at Union Correctional Institute was irrelevant to any material issue and the objection was properly sustained.
With regard to the question whether Griffin had ever made a knife before, however, we believe the defense inquired into a relevant matter. Since it was established that Joe Saylor was stabbed to death, the fact that Griffin may have made other knives was just as relevant as was the fact that he made one for appellant. Therefore the trial court erred in sustaining the state's objection on the ground of relevance. However, the error was harmless. In subsequent cross examination defense counsel asked Griffin whether he had ever before been asked to make a knife and he responded that he had not. Defense counsel asked him whether he had ever made a knife before and he responded that he had. Thus the defense was permitted to ask substantially the same question that had earlier been disallowed and the court's earlier error was cured. When the court errs in disallowing certain evidence or a question or series of questions on cross examination but substantially the same matters sought to be presented or elicited are brought before the jury through other testimony of *11 the same or another witness, the error is harmless. Palmes v. State, 397 So.2d 648 (Fla. 1981); Denmark v. State, 95 Fla. 757, 116 So. 757 (1928); Baker v. State, 30 Fla. 41, 11 So. 492 (1892), overruled in part, Tipton v. State, 97 So.2d 277 (Fla. 1957).
Appellant contends that the trial court abused its discretion in refusing to allow defense counsel to reopen his closing argument for the purpose of commenting on the state's failure to call appellant's cellmate Robitaille as a witness. Appellant points out that the testimony of Dan Helton placed Robitaille in the room at the time of the murder. Therefore, he argues, Robitaille was almost certainly a person with knowledge of material facts. The fact that such a person was not called to testify, appellant claims, was a proper subject for comment by defense counsel.
The court denied the request for reopening of defense counsel's argument on the ground that since the defense could have called Robitaille as easily as could have the state, the comment defense counsel wished to make would have been improper.
We agree with appellant that the fact that Robitaille was not produced as a witness was a matter "within the bounds of that considerable degree of latitude which is allowed counsel in argument." Pell v. State, 97 Fla. 650, 661, 122 So. 110, 114 (1929). Had defense counsel managed to make an appropriate comment within the time allotted to him for argument, the comment would have been permissible. The court was not obliged, however, to interrupt the orderly flow of the trial to afford the defense a second opportunity to bring the matter to the attention of the jury. The trial court's ruling should not be held to require reversal unless "clearly erroneous and prejudicial." Id. at 662, 122 So. at 115.

SENTENCE
Appellant contends that his sentence of death must be vacated because section 921.141, Florida Statutes (1977), pursuant to which the sentence was imposed, is unconstitutional. He argues that the statute seeks to regulate matters of criminal trial practice and procedure, which are exclusively the province of this Court under the rule-making power assigned to it by article V, section 2(a), Florida Constitution.
This argument is without merit. The aggravating and mitigating circumstances enumerated in section 921.141 are substantive law. Vaught v. State, 410 So.2d 147 (Fla. 1982); State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, Hunter v. Florida, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974).
The aggravating circumstances of Fla. Stat. § 921.141(6), F.S.A., [sic] actually define those crimes  when read in conjunction with Fla. Stat. §§ 782.04(1) and 794.01(1), F.S.A.  to which the death penalty is applicable in the absence of mitigating circumstances. As such, they must be proved beyond a reasonable doubt before being considered by judge or jury.
Id. at 9. To the extent that section 921.141 pertains to procedural matters such as the bifurcated nature of the trial in capital cases, it has been incorporated by reference in Florida Rule of Criminal Procedure 3.780, promulgated by this Court, and is therefore properly adopted. See The Florida Bar, Re Florida Rules of Criminal Procedure, 343 So.2d 1247, 1263 (Fla. 1977).
Appellant contends that section 921.141 is unconstitutional as applied to him because the judge and jury were precluded from giving proper consideration to the evidence he offered in mitigation of his crime. He argues that the procedure utilized at his sentencing trial pursuant to section 921.141 prevented the judge and jury from assigning the proper weight to his mitigating evidence and that this violated principles of the Eighth and Fourteenth Amendments developed in Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). We have specifically held, however, that section 921.141 and the procedure utilized thereunder are in keeping with the principles of Lockett. Songer v. State, 365 So.2d 696 (Fla. 1978) (on rehearing), cert. denied, 441 U.S. 956, 99 S.Ct. 2185, 60 L.Ed.2d 1060 (1979).
*12 Appellant contends that he is entitled to a new sentencing trial because the jury that recommended the death penalty was made aware of the fact that appellant's previous conviction of second-degree murder, for which he was serving a thirty-year sentence at the time of the instant murder, was obtained pursuant to an indictment for first-degree murder. Appellant argues that apprising the jury of this fact violated the principles of Elledge v. State, 346 So.2d 998 (Fla. 1977) and Provence v. State, 337 So.2d 783 (Fla. 1976), cert. denied, 431 U.S. 969, 97 S.Ct. 2929, 53 L.Ed.2d 1069 (1977), which hold that only convictions, and not mere accusations, may be presented to establish the statutory aggravating circumstance of previous conviction of violent crime. See § 921.141(5)(b), Fla. Stat. (1977).
The rule of Provence that "mere arrests or accusations" may not be considered as factors in aggravation does not require a new sentencing trial in this case. Here there was no "mere" accusation that had not led to a conviction. There was an accusation of first-degree murder that led to a conviction for second-degree murder. This was relevant not only to fully apprise the jury of the background of appellant's previous conviction, it was also relevant to rebut appellant's attempt to show that his history of criminal activity was not significant. Furthermore, we note that appellant did not object to allowing the previous indictment to go to the jury at the time it was introduced, but raised the issue for the first time in his motion for new trial. We perceive no error.
Finally, appellant contends that the trial court erred in its evaluation of the circumstances of this case and that the sentence of death is simply inappropriate. The judge found that at the time of the murder, appellant was under sentence of imprisonment, § 921.141(5)(a), Fla. Stat. (1977); that appellant had previously been convicted of a felony involving the use or threat of violence, id., § 921.141(5)(b); and that the capital felony was especially heinous, atrocious, or cruel, id., § 921.141(5)(h). The first two aggravating circumstances found were amply supported by evidence of appellant's incarceration and documentation of his previous judgment of conviction of second-degree murder, rendered on an indictment for first-degree murder. Under established precedent interpreting the capital felony sentencing law, the third aggravating circumstance is also supported. The evidence showed that death was caused by one or more of ten stab wounds inflicted upon the victim by appellant. See Rutledge v. State, 374 So.2d 975 (Fla. 1979), cert. denied, 446 U.S. 913, 100 S.Ct. 1844, 64 L.Ed.2d 267 (1980); Foster v. State, 369 So.2d 928 (Fla.), cert. denied, 444 U.S. 885, 100 S.Ct. 178, 62 L.Ed.2d 116 (1979); Washington v. State, 362 So.2d 658 (Fla. 1978), cert. denied, 441 U.S. 937, 99 S.Ct. 2063, 60 L.Ed.2d 666 (1979).
The trial judge found that there were no mitigating circumstances. We uphold this finding against appellant's contentions of error. The jury recommended that a sentence of death be imposed. We hold that under these circumstances, the death sentence is proper.
The judgment and sentence are affirmed.
It is so ordered.
SUNDBERG, C.J., and ADKINS, BOYD, OVERTON, ALDERMAN and McDONALD, JJ., concur.