WARNER, Judge,
concurring specially.
I concur in the majority opinion which affirms appellant’s conviction for sexual battery of his daughter. One of the main issues on appeal was whether the trial court erred in failing to strike for cause two prospective jurors who themselves had been sexually abused by their stepfathers. After having read the entire voir dire with respect to these women, I am convinced that they were not of a state of mind regarding their own experience which would prejudice them in deciding this case. See Singer v. State, 109 So.2d 7 (Fla.1959).
I do not read in their answers to the questioning by the parties or the court any uncertainty with respect to their ability to be impartial. While juror Gibbons said “I think I could [be fair],” the underlying emphasis on the word “think” in appellant’s brief is only that — the emphasis appellant wishes us to place on the word, not necessarily the inflection used by the juror herself. Furthermore, the jurors’ responses were to questions by the attorneys and court which were to a large extent phrased, “Do you think [you can listen to the evidence and be fair and impartial]?” In denying the challenge for cause, the court recollected their answers and stated, “I’m satisfied she was very clear that she would be willing to listen and hear both sides before she made any type of decision and follow the law.”
The mere use of the words “I think” by a juror should not permit the appellate court on a cold record to determine that the trial court abused its discretion in seating a partial juror. My own experience is that “I think” precedes expressions of opinion so frequently as to be in a category with “you *1038 know” in some peoples’ conversation. In other words, in many contexts the words are merely space fillers. It is the inflection used, the furrowing of the brow, the pensive expression, and, yes, the body language which may import uncertainty to the words “I think I can.” We can’t read that into a cold record and should not second guess the trial judge who sees and hears the juror and can use that in determining whether the juror cannot be entirely impartial. In this case, unlike the cases cited by appellant, neither juror expressed a misgiving that her prior experience would prevent her from being impartial.
The underlying question is whether anyone who suffers sexual abuse could sit on a jury where an individual is being tried for a crime of sexual abuse. While I have no doubt that sexual abuse victims carry lasting impressions, I cannot conclude that their experiences automatically disqualify them from jury service in a sex crime case, any more than the victim of a burglary would be automatically disqualified from sitting on a jury for a burglary. The Supreme Court said in State v. Williams, 465 So.2d 1229 (Fla.1985):
[I]n Lusk [v. State, 446 So.2d 1038 (Fla.), cert. denied, 469 U.S. 873, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984) ] we held that ‘[t]he test for determining juror competency is whether the juror can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the Court.’ 446 So.2d at 1041 (citing Singer v. State, 109 So.2d 7 (Fla.1959)).
The person in the best position to determine this actual bias is the trial judge. The trial judge hears and sees the prospective juror and has the unique ability to make an assessment of the individual’s candor and the probable certainty of his answers to critical questions presented to him. This is why a trial court has broad discretion regarding juror bias, Hawthorne v. State, 399 So.2d 1088 (Fla. 1st DCA 1981), and his or her finding will not be disturbed ‘unless error is manifest.’ Singer v. State, 109 So.2d 7, 22 (Fla.1959).
Id. at 1231. The trial judge in this case, having seen and heard these two jurors, was not at all concerned with their ability to be impartial. Neither juror had to be coaxed from positions of uncertainty and doubt into statements that they would be fair. I will defer to the superior vantage point of the trial court in this matter.
Finally, one other issue relating to the conviction bears mention. The appellant claims that it was error to admit the testimony of Kimberly Thorne because the sexual incident with appellant about which she testified was not similar in that appellant was neither in a position of familial authority over Thorne nor was the fondling similar to the charged acts. As to the issue of familial authority, Ms. Thorne testified that the incident occurred when her mother allowed her and appellant’s children to accompany appellant on an overnight trip. Therefore, I think this amounts to a temporary “familial authority” consistent with other cases. See Potts v. State, 427 So.2d 822 (Fla. 2d DCA 1983); Cotita v. State, 381 So.2d 1146 (Fla. 1st DCA 1980), pet. for rev. denied, 392 So.2d 1373 (Fla.1981). Secondly, while the acts testified to by Thorne amounted only to fondling, this was similar to conduct testified to without objection by the victim, appellant's daughter, during the time periods of the actual crimes charged. (See R. 585-586). See also Woodfin v. State, 553 So.2d 1355 (Fla. 4th DCA 1989), rev. denied, 563 So.2d 635 (Fla.1990).