626 So.2d 1325 (1993)
Jeffrey ATWATER, Appellant/Cross-Appellee,
v.
STATE of Florida, Appellee/Cross-Appellant.
No. 76327.
Supreme Court of Florida.
September 16, 1993.
Rehearing Denied November 29, 1993.
*1327 James Marion Moorman, Public Defender, and Stephen Krosschell, Asst. Public Defender, Tenth Judicial Circuit, Bartow, for appellant, cross-appellee.
Robert A. Butterworth, Atty. Gen., and Candance M. Sunderland, Asst. Atty. Gen., Tampa, for appellee, cross-appellant.
PER CURIAM.
Jeffrey Atwater appeals his convictions for first-degree murder and robbery and corresponding sentence of death. We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution.
On August 11, 1989, Atwater entered the John Knox Apartments in St. Petersburg, Florida, to see Ken Smith, the victim in this case. Upon entering the apartment building, Atwater proceeded to Smith's room where he remained for about twenty minutes. After Atwater left, Smith's body was discovered in the room. Smith was dead and his money was missing. Atwater told several people that he had killed Smith. Atwater was arrested the same day for killing Smith. At trial, he was convicted of first-degree murder and robbery. The jury recommended death by a vote of eleven to one. The trial judge found three aggravating factors and no statutory mitigating factors. The judge held that the aggravators outweighed the mitigators and sentenced Atwater to death. This appeal ensued.
Atwater claims that the trial court erred in allowing the State to exercise a peremptory challenge removing the sole black person in the venire. We disagree. Upon Atwater's objection to the peremptory challenge, the trial court inquired as to the State's reasons. The record reflects that the court's inquiry was adequate and the record supports the State's explanation for exercising the challenge. The court expressly noted that the prospective juror had difficulty answering the questions put to her and her demeanor indicated that she was hesitant and uncomfortable regarding the death penalty. This is a valid, race-neutral reason for exercising a peremptory challenge, and the court did not abuse its discretion in upholding the challenge.
Atwater also argues that the judge erred in the handling of a response to a juror's inquiry. After the instructions were given at the conclusion of the guilt phase but before the jury began its deliberations, one of the jurors said, in the presence of the attorneys for the defense and the State, that he had a question dealing with an interpretation of the law. The judge told him that he could not provide anything more than already provided in the jury instructions. The judge suggested that the juror study the instructions and consult with the other jurors to resolve the question. If the jury, as a group, had any further questions, the judge asked them to inform the bailiff who, in turn, would tell the judge.
Atwater contends that the judge's response violated the per se rule of Curtis v. State, 480 So.2d 1277 (Fla. 1985), and Bradley v. State, 513 So.2d 112 (Fla. 1987), in that counsel was not given the opportunity to assist in formulating the answer. We first note that the juror simply said that he had a question rather than asking a question. In any event, neither counsel said anything either before or after the judge's response, and they had every opportunity to do so. Under these circumstances, we find no violation of the rule. See Colbert v. State, 569 So.2d 433 (Fla. 1990). Our recent decision in Mills v. State, 620 So.2d 1006 (Fla. 1993), is distinguishable because there the judge never disclosed what he had been asked until he responded to the jury's question. Atwater's assertion that the judge's statement was erroneous because it implicitly discouraged further communication between the judge and jury is totally without merit.
While Atwater does not challenge insufficiency of the evidence to convict of the murder, our review of the record demonstrates overwhelming evidence of guilt. However, Atwater attacks his conviction of robbery.[1] *1328 He claims that the evidence introduced by the State to support the charge was not sufficient. At trial, Atwater presented two defenses to robbery. First, the theft was an afterthought and, therefore, Atwater did not have the requisite intent to commit robbery. Second, the State failed to prove that Atwater actually took anything. The State argues that there was competent evidence established to rebut any reasonable hypothesis of innocence.
Where circumstantial evidence is relied upon to prove a crime, in order to overcome a defendant's motion for judgment of acquittal, the burden is on the State to introduce evidence which excludes every reasonable hypothesis except guilt. The State is not required to conclusively rebut every possible variation of events which can be inferred from the evidence but only to introduce competent evidence which is inconsistent with the defendant's theory of events. State v. Law, 559 So.2d 187, 189 (Fla. 1989). Once this threshold burden has been met, the question of whether the evidence is sufficient to exclude all reasonable hypotheses of innocence is for the jury to determine.
In the instant case, the State presented testimony showing that Atwater had obtained money from Smith on previous occasions, that Smith feared Atwater, and that, on the day of the murder, Smith told a friend that he was not going to give Atwater any more money. Further, there was evidence that Smith had cash in his trousers pocket shortly before the killing. When the body was found, the pockets were turned out and the only money found in the room was a few pennies on the floor. We conclude that the judge properly denied the motion for judgment of acquittal and that there was sufficient evidence to convict of robbery.
Atwater next raises a number of issues regarding the penalty phase of the trial. Atwater argues that the trial court erred by allowing evidence of lack of remorse before the jury. On direct examination, Dr. Merin discussed Atwater's antisocial personality. We agree that the court erred in permitting the State on cross-examination to ask him whether persons with antisocial personality showed remorse. However, we find that, on this record, the error was harmless beyond a reasonable doubt. State v. DiGuilio, 491 So.2d 1129, 1134-35 (Fla. 1986).[2]
In his sentencing order, the trial judge found the following aggravating factors existed in the instant case: (1) the murder was committed while Atwater was engaged in the commission of a robbery; (2) the murder was especially heinous, atrocious, or cruel; and (3) the murder was cold, calculated, and premeditated. § 921.141(5)(d), (h), (i), Fla. Stat. (1989). Atwater claims that the jury instruction on the heinous, atrocious, or cruel aggravating factor was unconstitutionally vague. He also claims that there was insufficient evidence to support this aggravating factor.
Prior to the penalty phase of the trial, defense counsel requested that a Dixon instruction[3] be given. After a lengthy discussion between the defense, prosecution, and trial judge regarding the merits of the *1329 Dixon instruction, the judge decided to give only the first half of that instruction, defining the terms "heinous, atrocious or cruel." The instruction, which was eventually given to the jury, was essentially the same as the one held to be inadequate in Shell v. Mississippi, 498 U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990). While the defense made no further objection to the instruction as given, we believe the point was sufficiently preserved for appeal by virtue of the prior request for a legally proper instruction.
Notwithstanding, we conclude that the giving of the erroneous instruction was harmless beyond a reasonable doubt. DiGuilio, 491 So.2d at 1134-35. The victim in this case was stabbed at least forty times. The sentencing order recites:
The Court has carefully reviewed the evidence and finds, in fact, that [the heinous, atrocious, or cruel aggravating] factor does exist beyond a reasonable doubt. In reaching this conclusion, the Court has considered evidence that the Defendant killed his sixty-four (64) year old victim by inflicting nine (9) stab wounds to the back, eleven (11) incised wounds to the face, six (6) incised wounds to the neck, one (1) incised wound to the left ear, one (1) incised wound to the right shoulder, one (1) incised wound to the right thumb, nine (9) stab wounds to the chest area including heart and lungs, two (2) superficial puncture wounds to the abdomen, a scalp laceration on the back of the head as a result of blunt trauma, multiple abrasions and contusions about the body, blunt trauma resulting from fractured thyroid cartilage, and blunt trauma to the chest causing multiple rib fractures. The medical examiner... testified that these injuries occurred while Kenneth Smith was alive, and that death or unconsciousness would not have occurred until one to two minutes after the most serious, life threatening wounds to the heart were inflicted.
Our examination of the record reflects that the evidence presented at trial supports these findings. The evidence also shows that the stab wounds were more likely inflicted in the order of increasing severity and that the fatal wounds to the heart were probably inflicted last. Additionally, Atwater beat his victim prior to or during the stabbing.
This Court has consistently upheld findings of heinous, atrocious, or cruel where the evidence shows the victim was repeatedly stabbed. Nibert v. State, 508 So.2d 1, 4 (Fla. 1987); Johnston v. State, 497 So.2d 863, 871 (Fla. 1986); Lusk v. State, 446 So.2d 1038, 1043 (Fla.), cert. denied, 469 U.S. 873, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984); Morgan v. State, 415 So.2d 6, 12 (Fla.), cert. denied, 459 U.S. 1055, 103 S.Ct. 473, 74 L.Ed.2d 621 (1982). In this case, the State produced sufficient evidence to adequately establish the existence of the heinous, atrocious, or cruel aggravating factor beyond a reasonable doubt and by any standard. Floyd v. State, 569 So.2d 1225, 1232 (Fla. 1990), cert. denied, ___ U.S. ___, 111 S.Ct. 2912, 115 L.Ed.2d 1075 (1991); Foster v. State, 614 So.2d 455, 462 (Fla. 1992). The jury could not have been misled by the inadequate instruction. See Foster, 614 So.2d at 462.
Atwater also contends that the trial court erred in finding that the murder of Kenny Smith was cold, calculated, and premeditated without any pretense of legal or moral justification. We disagree. The evidence at trial showed that Atwater had made statements that he intended to kill Smith and was seen looking for Smith on each of the three days prior to the murder. Furthermore, to gain entrance to Smith's apartment building and to get by the security desk at the entrance, Atwater misrepresented himself as Smith's grandson and lied about his reason for the visit. Upon gaining entrance, Atwater murdered Smith, robbed him, and left the building in a calm and deliberate manner. The record in this case clearly supports a finding of cold, calculated, and premeditated murder.[4]
Finally, we reject Atwater's claim that the sentencing order did not clearly state which nonstatutory mitigating factors *1330 the judge found or what weight he gave them. With respect to nonstatutory mitigating factors, the sentencing order states:
In considering any other aspect of Defendant's character or record and any other circumstances in the evidence which was proffered as a mitigating circumstance, the Court has carefully considered the following: whether the Defendant was under the influence of mental or emotional distress (even if not "extreme"); whether the Defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired (even if not "substantially" impaired) by lack of intelligence, personality disorder, consumption of alcohol or a perception that his aunt was being treated abusively by the victim. The Court additionally considered and weighed the Defendant's family background and his lack of a close family relationship. All of these factors were presented to the jury during the penalty phase of the proceedings in this case, as well as now being fully considered and weighed by the Court.
While the judge did not indicate the extent to which each factor existed, it is evident that he found nonstatutory mitigation to exist and that he carefully weighed it in his deliberations.
The remainder of Atwater's claims[5] are without merit. Accordingly, we affirm the convictions and sentence of death.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] A reversal of the robbery conviction would not affect the murder conviction because the jury was instructed on both premeditated and felony murder, there was ample evidence to demonstrate premeditation, and the jury returned a general guilty verdict of murder. Teffeteller v. State, 439 So.2d 840 (Fla. 1983), cert. denied, 465 U.S. 1074, 104 S.Ct. 1430, 79 L.Ed.2d 754 (1984); see Griffin v. United States, ___ U.S. ___, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991).
[2] Atwater's similar claim that the trial judge improperly relied on lack of remorse in considering aggravating factors has no merit.
[3] In State v. Dixon, 283 So.2d 1, 9 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974), we stated:

It is our interpretation that heinous means extremely wicked or shockingly evil; that atrocious means outrageously wicked and vile; and, that cruel means designed to inflict a high degree of pain with utter indifference to, or even enjoyment of, the suffering of others. What is intended to be included are those capital crimes where the actual commission of the capital felony was accompanied by such additional acts as to set the crime apart from the norm of capital felonies  the conscienceless or pitiless crime which is unnecessarily torturous to the victim.
This description of "heinous, atrocious or cruel" is known as the Dixon instruction and is the current Florida Standard Jury Instruction on that aggravating factor. Fla.Std.Jury Instr. (Crim.) 77.
[4] Atwater claims that he had a pretense of moral justification to murder Smith because Smith was having a relationship with Atwater's aunt and Atwater believed Smith was abusing her. Also, Atwater was jealous of Smith because of the relationship. This claim has no merit.
[5] Atwater additionally claims that the judge erred in failing to call a witness as a court witness, that the judge erred in instructing the jury on the murder committed during the course of a robbery aggravating factor, and that the death sentence was not proportionate.