402 So.2d 1159 (1981)
William Glenn WELTY, Appellant,
v.
STATE of Florida, Appellee.
No. 55497.
Supreme Court of Florida.
July 2, 1981.
Rehearing Denied September 24, 1981.
*1161 Richard L. Jorandby, Public Defender and Ellen Morris, Asst. Public Defender, West Palm Beach, for appellant.
Jim Smith, Atty. Gen. and Russell S. Bohn, Asst. Atty. Gen., West Palm Beach, for appellee.
ALDERMAN, Justice.
William Glenn Welty was convicted of first-degree murder. After a jury recommendation of life imprisonment, the trial court imposed the death sentence. We find no reversible error in his conviction, but we reduce his sentence to life in accordance with the jury's recommendation because the facts suggesting a death sentence are not "so clear and convincing that virtually no reasonable person could differ." Tedder v. State, 322 So.2d 908, 910 (Fla. 1975).
While hitchhiking late at night, Welty was picked up by the victim, Jesse Burkhalter. Burkhalter persuaded Welty to accompany him to his condominium to engage in homosexual acts in return for which Burkhalter offered remuneration. After sleeping for a few hours with Burkhalter, who was in a highly intoxicated condition, Welty arose and left, taking with him the victim's stereo and white mustang automobile and leaving the door to the condominium unlocked. He drove to his trailer in Burkhalter's automobile and set up the stereo. Within a brief period of time, he left his trailer accompanied by one of his room-mates, John Fox, and returned to Burkhalter's condominium with intent to steal other items. Upon entering the condominium, Welty went directly into Burkhalter's bedroom, struck him several times in the neck, and set fire to his bed. Welty and Fox then left, and, as they were driving away from the scene, Welty informed Fox that he had struck Burkhalter eight or nine times and that he had set fire to his bed and pillow. Welty confessed to having gone back to Burkhalter's apartment and to having struck him in the neck once but denied that he had killed him.
Responding to a fire at Burkhalter's condominium, the Winter Park Fire Department *1162 discovered Burkhalter's charred body lying in his bed. The medical examiner testified that Burkhalter's larynx was fractured by repeated blows, that his hyoid was fractured in two areas, and that there was extensive hemorrhaging caused by manual strangulation. He testified that death resulted from strangulation and that the fire had in no way contributed to the death.
Welty objects to his conviction on several grounds. Relying upon our recent decision in Tascano v. State, 393 So.2d 540 (Fla. 1980), he contends that the trial court reversibly erred in not instructing the jury as to the penalties which could be imposed for the charge against him. In Tascano, we held that the language of Florida Rule of Criminal Procedure 3.390(a), providing that the trial judge must include in his charge to the jury "the maximum and minimum sentences which may be imposed (including probation) for the offense for which the accused is then on trial," is mandatory and that, upon request of either the State or defendant, the trial judge must instruct on the maximum and minimum sentence for the crime charged. Tascano does not compel the result urged here by Welty, however. Welty was indicted and tried for first-degree murder. On several occasions during the trial, the jury was advised that the maximum penalty for murder in the first degree was death and the minimum penalty was life imprisonment. The trial court's failure to again advise the jury what it had already been told was not reversible error.
Welty next complains that he was denied a fair trial because the deceased victim's brother was permitted to give identification testimony. We acknowledge and adhere to the well-established rule in Florida that a member of the deceased victim's family may not testify for the purpose of identifying the victim where nonrelated, credible witnesses are available to make such identification. See Lewis v. State, 377 So.2d 640 (Fla. 1979); Rowe v. State, 120 Fla. 649, 163 So. 22 (1935); Ashmore v. State, 214 So.2d 67 (Fla. 1st DCA 1968). Admission of the identification testimony from a member of a victim's family, however, is not fundamental error and may be harmless error in certain instances. Malloy v. State, 382 So.2d 1190 (Fla. 1979); Rankin v. State, 143 So.2d 193 (Fla. 1962); Barrett v. State, 266 So.2d 373 (Fla. 4th DCA 1972); Scott v. State, 256 So.2d 19 (Fla. 4th DCA 1971). The basis for this rule is to assure the defendant as dispassionate a trial as possible and to prevent interjection of matters not germane to the issue of guilt.
In the present case, it is clear from the record that the brother's identification testimony was not of such a nature as to evoke the sympathy of the jury or to prejudice the defendant. Nor can we say that the brother's testimony was not necessary to establish the identity of the deceased beyond a reasonable doubt. Here the neutral witnesses referred to by Welty were a fingerprint technician, who testified that the prints from the victim's right hand matched the prints of Burkhalter on file with the Federal Bureau of Investigation as a result of an April 1976 DWI arrest of Burkhalter, and a former member of the Casselberry Police Department, who had arrested Burkhalter in 1976 for DWI and who identified Burkhalter from a 1976 mug shot taken at the time of the DWI arrest. Even though Welty was willing to stipulate to the identity of the victim, this did not prevent the State from presenting additional relevant evidence to prove identity beyond a reasonable doubt. We find that the trial court did not reversibly err in permitting this testimony.
Furthermore, we find no abuse of discretion by the trial court in permitting testimony, relative to the deceased's military medals and the circumstances surrounding the loss of his leg, which was relevant to the question of identity. See Stone v. State, 378 So.2d 765 (Fla. 1979), cert. denied, 449 U.S. 986, 101 S.Ct. 407, 66 L.Ed.2d 250 (1980), wherein we stated the fundamental rule of evidence that any fact relevant to prove a fact in issue is admissible into evidence unless its admissibility is precluded by some specific rule of evidence. The trial court has wide discretion *1163 in areas concerning the admission of evidence, and, unless an abuse of discretion can be shown, its rulings will not be disturbed. Mikenas v. State, 367 So.2d 606 (Fla. 1978); Rodriguez v. State, 327 So.2d 903 (Fla.3d DCA), cert. denied, 336 So.2d 1184 (Fla. 1976).
Relying primarily on conflicts in testimony of two key State witnesses, Welty argues that the evidence is insufficient to support his conviction for first-degree murder either on the basis of premeditated murder or felony murder. We disagree and hold that the record contains substantial, credible evidence supporting the verdict of guilty of murder in the first degree, on the basis of felony murder as well as premeditated murder. Welty effectually requests us to evaluate the credibility of the witnesses. This, however, is the province of the jury, and we will not reverse a judgment based upon a verdict returned by a jury where there is substantial, competent evidence to support the jury verdict. Clark v. State, 379 So.2d 97 (Fla. 1979).
Welty's own statement to the authorities which was introduced into evidence placed him in Burkhalter's bedroom at the exact time of the murder. He admits striking the victim in the throat although he says he struck him only one time, and he portrays himself leaving the murder scene at about the time the fire marshal estimated the fire was started. He further concedes that Fox, who accompanied him to the apartment, could not have struck Burkhalter or set the fire.
Fox, whose credibility was the province of the jury to evaluate, testified that Welty went back to Burkhalter's condominium, walked directly into the bedroom, in a matter of minutes returned, and said they must leave immediately. Fox testified that Welty had told him that he had struck Burkhalter eight or nine times and started a fire. Welty admitted to others who also testified that he had struck Burkhalter. He told one witness that he had killed a man and wanted to make sure no evidence was left behind. There was sufficient evidence to indicate that Welty returned to take other items from Burkhalter's apartment and that his second entry into Burkhalter's residence was not consented to.
Additionally, there was ample evidence of premeditation. Circumstances indicating premeditation include the manner in which the homicide was committed and the nature and manner of the wounds inflicted. Mines v. State, 390 So.2d 332 (Fla. 1980); Larry v. State, 104 So.2d 352 (Fla. 1958). The evidence before us was clearly sufficient to convict Welty beyond a reasonable doubt.
Furthermore, we find no merit to Welty's contention that the trial court denied him a fair trial by excluding certain evidence proffered by Welty. The trial court has wide discretion in this regard, and a review of the entire record reveals that it did not abuse its discretion in this case. Additionally, we find no error in the admission of the photographs which depicted the injuries to the deceased victim's neck bones. The medical examiner explained in detail why these photographs would be relevant and of extreme value to him in explaining the injuries of the deceased to the jury. The test of admissibility of these photographs is relevancy to an issue required to be proven in a case. Bauldree v. State, 284 So.2d 196 (Fla. 1973); Young v. State, 234 So.2d 341 (Fla. 1970). Applying this test of admissibility, we find the photographs were relevant. They assisted the medical examiner in explaining to the jury the nature and manner in which the wounds were inflicted upon the deceased.
Welty also contends that the trial court erred in denying his motion to suppress his statement made to detectives of the Winter Park Police Department. The trial court properly denied this motion to suppress. Prior to making a statement, Welty was repeatedly advised of his Miranda rights. This statement was in no way elicited by police interrogation, and the trial court correctly determined that Welty was fully advised of his Miranda rights and that he understood them and voluntarily waived them.
*1164 Although Welty now challenges a statement made by a witness as a comment on his right to remain silent, he failed to preserve this point for appeal by objecting to the statement and moving for mistrial. See Clark v. State, 363 So.2d 331 (Fla. 1978). Moreover, we note that the comment objected to by Welty does not amount to a comment on his right to remain silent.
Although acknowledging that this Court has consistently held that allowing the State to proceed on alternative theories of premeditated murder and felony murder under an indictment charging premeditated murder does not violate due process, Welty urges that under the particular facts of this case, his due process rights were violated. We find no merit to his contention. See State v. Pinder, 375 So.2d 836 (Fla. 1979); Knight v. State, 338 So.2d 201 (Fla. 1976); Larry v. State.
As relates to Welty's challenge to the excusal of venirewoman Egan on the basis of her views on capital punishment, we find that the trial court correctly followed the standards enunciated by the Supreme Court of the United States in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), when it excused Egan. See also Adams v. Texas, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980).
Welty also challenges his sentence of death on several grounds, some of which we find have merit. The jury returned an advisory recommendation of life imprisonment, but the trial court, finding no mitigating and six aggravating circumstances, imposed the death sentence.
We agree with the trial court's finding that defendant created a great risk of death to many persons when he set fire to the victim's bed. Setting the fire was clearly conduct surrounding the capital felony for which he is being sentenced. Mines v. State. There were six elderly people asleep in the building in which the victim's condominium was located. This can be classified as many persons. Cf. Kampff v. State, 371 So.2d 1007 (Fla. 1979). In King v. State, 390 So.2d 315 (Fla. 1980), we held that by setting fire to the house in which the murder victim resided and in which no other person was present, the defendant had knowingly created a great risk of death to many persons because he should have reasonably foreseen that the blaze would pose a great risk to the neighbors as well as the firefighters and the police who responded to the call. In the present case, the fire posed a direct threat of death to those six elderly persons residing in the building as well as the neighbors, firefighters, and police responding to the call. The court also properly concluded that this murder was especially heinous, atrocious, or cruel.
We find, however, that the trial court erroneously doubled up the aggravating circumstances of commission of the murder while defendant was engaged in a burglary and commission of the murder for pecuniary gain since the evidence revealed that Welty entered without consent with intent to steal other items from the victim. Provence v. State, 337 So.2d 783 (Fla. 1976), cert. denied, 431 U.S. 969, 97 S.Ct. 2929, 53 L.Ed.2d 1065 (1977). Although the trial court properly found that this capital felony was committed to avoid arrest, the State concedes, and we agree, that the court erred in also finding that the capital felony was committed to disrupt or hinder the enforcement of law.
Finally, Welty argues that the trial court erred in overriding the jury recommendation of life. We agree that under the standard imposed by this Court in Tedder v. State, the court erred in imposing the sentence of death. In Tedder, we said: "In order to sustain a sentence of death following a jury recommendation of life, the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ." 322 So.2d at 910. Under the circumstances of this case, we believe that reasonable persons could differ. Although the trial court found no mitigating factors, there was evidence introduced by Welty relative to nonstatutory mitigating factors which could have influenced the jury to return a life recommendation. In light of the jury recommendation *1165 of life, we find that the sentence of death was inappropriate in this case. See also Neary v. State, 384 So.2d 881 (Fla. 1980); Malloy v. State, 382 So.2d 1190 (Fla. 1979); Brown v. State, 367 So.2d 616 (Fla. 1979); Shue v. State, 366 So.2d 387 (Fla. 1978).
Accordingly, we affirm the conviction but vacate the sentence of death and remand this cause to the trial court with directions to resentence Welty to life imprisonment without parole for twenty-five years.
It is so ordered.
OVERTON, ENGLAND and McDONALD, JJ., concur.
SUNDBERG, C.J., concurs in result only.
ADKINS, J., concurs as to conviction and dissents as to punishment.
BOYD, J., concurs in part and dissents in part with an opinion in which ADKINS, J., concurs.
BOYD, Justice, concurring in part and dissenting in part.
I concur with the affirmance of Welty's conviction. I dissent, however, from the majority's decision to reduce his sentence to life imprisonment. The sentence of death is appropriate to this case and there was no prejudicial error in the proceedings that culminated in the imposition of sentence.
When a capital felony is set apart, by the existence of one or more statutory aggravating circumstances, from the norm of capital felonies, there are no mitigating circumstances, and the sentencing judge has given due consideration to the recommendation of the jury, then a sentence of death should be affirmed by this Court. See Dobbert v. State, 375 So.2d 1069 (Fla. 1979), cert. denied, 447 U.S. 912, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980); Tedder v. State, 322 So.2d 908 (Fla. 1975); State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974).
The present case meets these criteria. I would affirm the sentence of death.
ADKINS, J., concurs.