446 So.2d 1038 (1984)
Bobby Earl LUSK, Appellant,
v.
STATE of Florida, Appellee.
No. 59146.
Supreme Court of Florida.
January 26, 1984.
Rehearing Denied April 10, 1984.
*1040 Michael E. Allen, Public Defender, Michael M. Corin and Nancy A. Daniels, Asst. Public Defenders, Tallahassee, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Carolyn M. Snurkowski, Asst. Atty. Gen., Miami, for appellee.
PER CURIAM.
This is an appeal from a final judgment of the Circuit Court of Bradford County imposing the death penalty. We have jurisdiction, article V, section 3(b)(1), Florida Constitution, and we affirm both the conviction and sentence.
At the Thanksgiving Day noon meal in the Florida State Prison cafeteria on November 23, 1978, Bobby Earl Lusk fatally stabbed inmate Michael Hall. Lusk was serving three consecutive life terms for two convictions of armed robbery with a pistol and a simultaneous conviction of first-degree murder. The victim, Hall, was serving a 30-year sentence for the second-degree stabbing murder of an inmate at Sumter Correctional Institution. Lusk initially made a statement to prison officials that Hall and two other inmates had robbed him in his cell on the morning of the murder, stabbed his mattress several times and threatened him if he reported the incident. He then said he would not take it anymore and resolved to kill one of the men. According to Lusk, he took his homemade knife to the dining hall at lunchtime and stabbed Hall in the back two or three times. (The body had three stab wounds in the back.) He concluded the statement by saying that Hall had been sitting when he stabbed him and Hall had thrown a tray at him after the stabbing. Lusk moved to suppress the confession as being involuntary but this was denied; the actual tape recording was not used at trial but only portions of a transcript of the tape. At trial, Lusk testified and offered self-defense as an explanation for the crime, stating that Hall threatened to "take him out" and that Hall attacked him first with a knife of his own. The jury returned a verdict of guilty as charged, and at the sentencing phase the jury recommended a sentence of life imprisonment. The judge disagreed and pronounced a sentence of death.
Lusk raises six issues on this appeal: 1.) denial of request for a thirty-day continuance; 2.) denial of a challenge for cause; 3.) prejudicial statement by the court; 4.) double jeopardy; 5.) jury override; and 6.) Gardner violation. Each of these has been carefully considered by the Court and found to be without merit.
Lusk argues first that the trial court erred in refusing to grant his motion for a thirty-day continuance of trial. Initially, Lusk had been represented by Shon Saxon of the Public Defender's Office but because Lusk filed a section 1983 suit against Saxon, Saxon moved to withdraw as Lusk's attorney. On October 9, 1979, the trial court granted the motion to withdraw and appointed another lawyer, Mack Futch, to represent Lusk. Trial date was set for December 3. On November 14, Futch filed for a thirty-day continuance alleging problems in getting depositions transcribed and in getting prison witnesses interviewed. The trial court entered an order on November 19 directing immediate transcription of the deposition material but denied the motion for continuance. On November 28, Futch filed an amended motion for continuance, and this too was denied.
The granting or denial of a motion for continuance is within a court's discretion and will not be overturned absent a palpable abuse of discretion. Jent v. State, 408 So.2d 1024 (Fla.), cert. denied, 457 U.S. 1111, *1041 102 S.Ct. 2916, 73 L.Ed.2d 1322 (1981); Ziegler v. State, 402 So.2d 365 (Fla. 1981), cert. denied, 455 U.S. 1035, 102 S.Ct. 1739, 72 L.Ed.2d 153 (1982); Magill v. State, 386 So.2d 1188 (Fla. 1980), cert. denied, 450 U.S. 927, 101 S.Ct. 1384, 67 L.Ed.2d 359 (1981). No abuse of discretion appears clearly and affirmatively on the record and we therefore refuse to say that the trial court committed error.
For his second issue, Lusk argues that the trial court erred in denying his challenge for cause of a prospective juror who was a prison correctional officer and who had heard conversations about the offense. Prior to trial, Lusk made an oral motion in chambers to disqualify present and past prison employees and their relatives from the venire. The court denied the motion, ruling that the offense did not involve acts against prison personnel. Lusk later challenged for cause prospective juror Williams, an employee at Union Correctional Institution (U.C.I.). The court overruled the challenge and Lusk then excused the juror with a peremptory challenge.
We recently addressed the same issue in Morgan v. State, 415 So.2d 6 (Fla.), cert. denied, ___ U.S. ___, 103 S.Ct. 473, 74 L.Ed.2d 621 (1982). In that case, Morgan was tried for the stabbing murder of a fellow inmate at U.C.I. He moved to exclude employees of the state prison system from the jury, basing his argument on section 40.07(2), Florida Statutes (1977) [now section 40.013(2)], which disqualified sheriffs, deputies and municipal police officers from jury service. We declined in that case to include all correctional officers within the classes of persons disqualified from jury service. Lusk argues that section 40.013(2) should disqualify correctional officers since a law enforcement position inherently creates a disability to serve as a fair and impartial juror. We disagree and reaffirm our holding in Morgan that state prison employees are not automatically disqualified from jury service.
The test for determining juror competency is whether the juror can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the court. Singer v. State, 109 So.2d 7 (Fla. 1959). Lusk has presented no evidence that prospective juror Williams would not have rendered his verdict solely upon the evidence presented. This Court has reviewed the transcript of jury selection and we are satisfied that Williams was not subject to challenge for cause because of any bias or prejudice.
In any event, Williams was peremptorily challenged and excused from the venire. Lusk argues that Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) and Stroud v. United States, 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103 (1919) stand for the rule that it is error for a court to force a party to exhaust his peremptory challenges on persons who should be excused for cause since it has the effect of abridging the right to exercise peremptory challenges. We need not reach this issue since Lusk's counsel agreed at oral argument before this Court that, although the record is somewhat unclear, Lusk indeed had not exhausted his peremptory challenges. See Young v. State, 85 Fla. 348, 96 So. 381 (1923). Furthermore, a review of the jury selection transcript discloses no sitting juror who appears unqualified and who should have been excused. No proof has been submitted by Lusk that casts any doubt on the conclusion that Lusk was convicted by a fair and impartial jury.
The third issue raised by Lusk is that the trial court erred when it instructed the jury that other prejudicial evidence was available for use against the defendant. Prior to the introduction of Lusk's confession, the court instructed the jury that the actual tape of the statement was not going to be introduced, only certain portions of the tape transcript. During that instruction, the court said:
The Court wishes to advise the jury that while the tape of this interview is available, there are some portions of the tape involving statements attributed to the defendant that do not relate to these *1042 proceedings and their use during the course of this trial before the jury may be prejudicial to the defendant. The Court does not wish such prejudicial matters to be presented to and considered during the course of this trial by the jury, and for that reason the tape will not be admitted into evidence nor used during the course of these proceedings. But, the transcript itself will be and is now declared to be admissible and you may proceed.
Lusk argues that the above remarks were a comment on the evidence which fundamentally destroyed his right to a fair trial.
Defense counsel, however, did not object to the above remarks. Had there been an objection, the jury could have been given curative instructions to disregard any inferences that could be drawn from said remarks. Because of a lack of an objection we must hold that the issue was not preserved for appeal and thus is not properly before this Court. Collins v. Farley, 147 So.2d 593 (Fla. 3d DCA 1962). Even if this issue were properly preserved, the trial court's remarks do not constitute grounds for reversal. Viewed in relationship to the totality of circumstances, the above comments clearly appear incidental within the scheme of the overall record. In addition, the comments were couched in qualifying terms. Also, if taken to its logical conclusion, the remarks certainly imply that the statements that were going to be presented to the jury were not prejudicial to Lusk. We hold, then, that the above comments by the trial court were not harmful error.
The fourth issue that Lusk raises is that the double jeopardy clause of the United States Constitution bars imposition of the death penalty by a trial court where the jury has made a life recommendation. Lusk bases his argument on Bullington v. Missouri, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981). But the Missouri statute at issue in that case is not identical to Florida's death penalty statute, the major and crucial difference being the binding nature of the jury sentence in that state. As we recently said in Dobbert v. State, 409 So.2d 1053, 1058 (Fla. 1982), "[b]ecause of the substantial differences between the sentencing procedures of Florida and Missouri, Bullington is clearly distinguishable."
Lusk raises as his fifth issue that the trial judge found improper aggravating circumstances, improperly doubled other aggravating circumstances, and failed to consider mitigating circumstances. In its findings of fact, the trial court found four aggravating circumstances. It found that the murder was committed by Lusk while under sentence of imprisonment, since Lusk was serving three consecutive life sentences for a previous first-degree murder and two offenses of robbery. It found that Lusk had previously been convicted of another capital felony and of a felony involving the use or threat of violence, since Lusk's three life sentences were for convictions for murder or of offenses involving firearms and a knife. It found that Lusk knowingly created a great risk of death to many persons, since "this stabbing could have resulted in a prison riot in which many persons, inmates and custodial personnel, could have been killed." Lastly, it found that the murder was especially heinous, atrocious or cruel, since the premeditated stabbing caused the victim to bleed to death with a high degree of pain. Finally, the trial court found that none of the evidence presented by the defense rose to the level of either a statutory or nonstatutory mitigating circumstance.
Lusk initially argues that the factor of knowingly creating a great risk of death to many persons is not supported by the facts. With this we agree. The trial court erred in basing this finding on mere supposition as to what could have happened. A person may not be condemned for what might have occurred; what is required is not a mere possibility of occurrence but a likelihood or high probability. Kampff v. State, 371 So.2d 1007 (Fla. 1979).
We disagree, however, with Lusk's remaining contentions concerning *1043 aggravating and mitigating factors. We affirm the trial court's holding that the stabbing was especially heinous, atrocious, or cruel. See Morgan v. State. We find, also, that the trial court properly found both a capital felony committed by a person under sentence of imprisonment and a previous conviction of another capital felony. There was no improper doubling of these factors. Id. Lastly, a review of the record shows that the trial court did not ignore evidence presented by Lusk in mitigation. It is clear that the trial judge did not believe that said evidence in its totality rose to the level of mitigation in Lusk's case. We conclude that the trial court did not err in its finding that no statutory or nonstatutory mitigating circumstances existed. See Daugherty v. State, 419 So.2d 1067 (Fla. 1982), cert. denied, ___ U.S. ___, 103 S.Ct. 1236, 75 L.Ed.2d 469 (1983); Riley v. State, 413 So.2d 1173 (Fla.), cert. denied, ___ U.S. ___, 103 S.Ct. 317, 74 L.Ed.2d 985 (1982).
We are left, then, with three aggravating circumstances and nothing in mitigation. A remand for new sentencing by the trial judge is not necessary in this case in light of the express conclusion of the trial court that even if the aggravating factors of great risk of death and heinous, atrocious or cruel were found by this Court to be in error, "the undisputed and multiple findings under sections 921.141(5)(A) and (B) [under sentence of imprisonment and previous convictions], alone, far outweigh any mitigating circumstances."
In Tedder v. State, 322 So.2d 908, 910 (Fla. 1975) we said:
A jury recommendation under our trifurcated death penalty statute should be given great weight. In order to sustain a sentence of death following a jury recommendation of life, the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ.
After having reviewed the record and in light of the totality of the circumstances, we hold that the jury override in this case is proper since the facts suggesting the death sentence are so clear and convincing that no reasonable person could differ. This is especially so given the fact that, as aggravation, the instant murder was committed by Lusk while he was serving three consecutive life sentences imposed in 1977 for a prior first-degree murder and two armed robberies with a pistol. Additionally, we conclude that the jury's recommendation of life was not based on any valid mitigating factor discernible from the record and therefore it was proper for the trial judge to decline to follow their recommendation.
The sixth and final issue raised by Lusk merits but brief discussion. Lusk argues fundamental error in that he was sentenced to death without personally reviewing the contents of a presentence investigation report (PSI) in violation of Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977). This issue was answered contrary to Lusk's position in Raulerson v. State, 358 So.2d 826 (Fla.), cert. denied, 439 U.S. 959, 99 S.Ct. 364, 58 L.Ed.2d 352 (1978) wherein we held that Gardner was satisfied by the PSI being available to defense counsel. In the present case, the record discloses that a copy of the PSI was furnished to Lusk's counsel.
It is the judgment of this Court that the issues raised by Lusk are without merit. We therefore affirm his conviction for first-degree murder and his sentence of death.
It is so ordered.

CONVICTION:
ALDERMAN, C.J., and ADKINS, BOYD, OVERTON, McDONALD, EHRLICH and SHAW, JJ., concur.

SENTENCE:

1. Imposition of death sentence:

EHRLICH and SHAW, JJ., concur.
ALDERMAN, C.J., concurs with an opinion in which ADKINS and BOYD, JJ., concur.
OVERTON, J., dissents with an opinion in which McDONALD, J., concurs.

*1044 2. Trial court's improper finding as aggravating circumstance of knowingly creating great risk of death to many persons:

EHRLICH and SHAW, JJ., concur.
OVERTON, J., concurs with an opinion in which McDONALD, J., concurs.
ALDERMAN, C.J., dissents with an opinion in which ADKINS and BOYD, JJ., concur.
ALDERMAN, Chief Justice, concurring in affirmance of conviction, concurring specially as to sentence.
Although I concur completely with the affirmance of Lusk's conviction and concur that the death sentence was properly imposed in this case, I disagree with the majority's finding that the trial court improperly found, as an aggravating circumstance, that Lusk knowingly created a great risk of death to many persons. I believe that this aggravating circumstance is supported by the facts of this case.
In reaching its conclusion, the majority relies on Kampff v. State, 371 So.2d 1007 (Fla. 1979), stating that great risk means not a mere possibility but a likelihood or high probability. In Kampff, we held that the trial court had erroneously applied this factor where defendant fired five shots at close range and where there were only two persons besides defendant and the victim present in the store at the shooting.
Since Kampff, however, this Court has modified Kampff's test of likelihood or high probability to a test of reasonable foreseeability. In King v. State, 390 So.2d 315 (Fla. 1980), we held that the trial court correctly found the existence of this aggravating factor where defendant had intentionally set fire to the house of his murder victim. We stated:
Appellant contends that the statutory aggravating circumstance of knowingly creating a great risk of death to many persons, based upon the arson offense, was not justified because no person other than the murder victim was in the house at the time of the arson. We reject this contention and find that when the appellant intentionally set fire to the house, he should have reasonably foreseen that the blaze would pose a great risk to the neighbors, as well as the firefighters and the police who responded to the call.

390 So.2d at 320 (emphasis supplied).
This Court again applied the test of reasonable foreseeability to determine the correctness of the trial court's finding that defendant had knowingly created a great risk of death in Welty v. State, 402 So.2d 1159 (Fla. 1981). In Welty, we agreed with the trial court that defendant created a great risk of death to many by setting fire to the victim's bed and reasoned:
There were six elderly people asleep in the building in which the victim's condominium was located. This can be classified as many persons. Cf. Kampff v. State, 371 So.2d 1007 (Fla. 1979). In King v. State, 390 So.2d 315 (Fla. 1980), we held that by setting fire to the house in which the murder victim resided and in which no other person was present, the defendant had knowingly created a great risk of death to many persons because he should have reasonably foreseen that the blaze would pose a great risk to the neighbors as well as the firefighters and the police who responded to the call. In the present case, the fire posed a direct threat of death to those six elderly persons residing in the building as well as the neighbors, firefighters, and police responding to the call.
402 So.2d at 1164 (emphasis supplied).
Employing this test of reasonable foreseeability, I would find that the trial court correctly decided that Lusk knowingly created a great risk of death to many persons. In finding this factor, the trial court explained:
The court, however, cannot overlook the fact that Florida State Prison houses convicted felons who are generally the most dangerous persons in the custody of the Department of Corrections and that violence *1045 too frequently occurs there involving the use of hand made weapons and knives such as that used in this murder. The selection by defendant of the food service hall then occupied by numerous inmates during their Thanksgiving Day noon meal for the time and place of the murder and the subsequent waving of his knife and loud threats made by him after this stabbing could have resulted in a prison riot in which many persons, inmates and custodial personnel, could have been killed, and they were all certainly exposed to that threat and danger.
Lusk could reasonably foresee these consequences resulting from his conduct. The fact that there was not a prison riot or that no other persons were killed does not mean that there was not a great risk of death to many persons at the time and place selected by Lusk to commit this murder.
I agree that the death sentence should be affirmed.
ADKINS and BOYD, JJ., concur.
OVERTON, Justice, concurring in part, dissenting in part.
I concur in the majority's affirmance of the conviction and the finding that the trial court improperly found as an aggravating circumstance that Lusk knowingly created a great risk of death to many persons. I dissent, however, from the majority's conclusion that the principles of Tedder v. State, 322 So.2d 908 (Fla. 1975), and McCaskill v. State, 344 So.2d 1276 (Fla. 1977), do not apply in this case. The jury could have reasonably believed the appellant's testimony that he had been threatened by the victim and feared for his life. The record does not support a finding that appellant's testimony is totally unbelievable. Given this conclusion, I find that there was a reasonable basis for the jury's recommendation of a life sentence under Tedder and McCaskill.
McDONALD, J., concurs.